**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| **MATTHEW FULKS,** | |
| **Plaintiff,** | |
| **v.** | |
| | Civil Action No.  16-CV-4278 |
| **BEYONCÉ GISELLE KNOWLES-CARTER,** | |
| **SONY MUSIC ENTERTAINMENT INC.,** | |
| **COLUMBIA RECORDING CORPORATION,** | **JURY DEMANDED** |
| **PARKWOOD ENTERTAINMENT LLC,** | |
| **Defendants.** | |

<u>**COMPLAINT**</u>

Plaintiff Matthew Fulks ("Fulks" or "Plaintiff") brings the following claims of copyright infringement against Defendants Beyoncé Giselle Knowles-Carter ("Beyonce"), Sony Music Entertainment ("Sony"), Columbia Recording Corporation ("Columbia"), and Parkwood Entertainment LLC ("Parkwood")(collectively "Defendants").

## INTRODUCTION

1.      Plaintiff is an individual resident of Louisville, Kentucky who works as an independent film maker.  Plaintiff's work includes the production of short films for recording labels for use in the production of videos promoting musical works.

2.      Plaintiff is also employed as the Creative Director at television station WDRB, the market's number one ranked news station, where he conceptualizes, writes, and directs television advertisements.

3.      Plaintiff is the author of *PALINOIA*, a short film depicting the pain of a tumultuous relationship ("*PALINOIA* Work").  Plaintiff completed creation of the *PALINOIA* Work in July 2014, with the creative process beginning in January 2014.

4.      The *PALINOIA* Work is an original creation that is distinctive within the short film genre and combines carefully selected but seemingly unrelated visuals in a rapid montage, with the recitation of a poem used as voiceover against a distinctive audio soundtrack.

5.      Non-party Bryan Younce is the Senior Vice-President of Video and Content Production at Columbia Music Entertainment.  Exhibit 1.

6.      Upon information and belief, Younce commissions directors and producers to create audiovisual content to accompany and/or promote the music recorded on the Columbia label.

7.      According to the web sites www.allaccess.com and www.fmqb.com, Younce has supervised the creation of videos and other visual content for Defendant Beyoncé Giselle Knowles-Carter ("Beyonce").  Exhibits 2 and 3.

8.      Beyonce's official web site, www.beyonce.com, lists Bryan Younce among those credited for working on Beyonce's 2013 album, *Beyoncé*, produced by Columbia Records/Sony Music.  Exhibit 4.

9.      In July 2015, non-party Chris Thomas, an artist manager at C3 Presents LLC ("C3") in San Antonio, Texas, contacted Plaintiff about an opportunity to direct and produce a video for the musical group MS MR, also represented by C3 and affiliated with Columbia. Exhibit 5.

10.     On July 22, 2015, Chris Thomas emailed MS MR's manager Brian Beck links to Plaintiff's work, including a link to the complete *PALINOIA* Work.  Exhibit 6.

11.     On July 24, 2015, MS MR manager Brian Beck forwarded the email string that included the link to Plaintiff's *PALINOIA* Work to Younce at Columbia.  Exhibit 6.

12.     On July 24, 2015, Younce sent a follow-up email to Brian Beck requesting Plaintiff's email address. The email string included Chris Thomas's original July 22, 2015 email to MS MR management that contained links to the *PALINOIA* Work.  Exhibit 6.  In the same email string, Younce notes that he previously tried to reach Plaintiff through the video sharing site "Vimeo" without success.  Exhibit 6.

13.     Chris Thomas provided the MS MR manager with Plaintiff's contact information by email and text dated July 29, 2016.  Exhibit 6.

14.     On July 29, 2015, the same day that Chris Thomas provided Younce with Plaintiff's contact information, Younce contacted Plaintiff directly by email acknowledging that he had received Plaintiff's "info."  Younce invited Plaintiff to submit additional storyboards and a development plan (commonly referred to as a "treatment") for consideration by Columbia. Exhibit 7.

15.     According to media accounts, in December 2015, approximately five months after Plaintiff's contact with Columbia's Bryan Younce, filming began for a trailer and film, both entitled *LEMONADE*.  The purpose of the trailer and film was to promote the release of Beyonce's musical album of the same name ("*LEMONADE* Album").  Exhibit 8.

16.     The *LEMONADE* Trailer ("*LEMONADE* Trailer"*)* is a sixty-five second long video that pieces together carefully selected, but seemingly unrelated visuals in a rapid montage, with the recitation of a poem used as voiceover against a distinctive audio soundtrack

17.     The *LEMONADE* Trailer is substantially similar to the *PALINOIA* Work, including, but not limited to: the *PALINOIA* Work's visual and auditory elements, visual and auditory sequences, themes, format, mood, setting, plot, and pace, all of which create a protectable total concept and feel.

18.     The number of aesthetic decisions included in Plaintiff's *PALINOIA* Work that are parroted in Defendants' *LEMONADE* Trailer demonstrates that the *LEMONADE* Trailer is substantially similar to the *PALINOIA* Work.  The misappropriated content includes both the particular elements that the Plaintiff chose to comprise the *PALINOIA* Work and the coordination and arrangement of those particular elements.

19.     Both the *PALINOIA* Work and the *LEMONADE* Trailer are comprised of short visual and audio segments arranged in montage fashion, with certain segments recurring throughout the works.  Both the selection of particular visual and auditory content and the particular elements of artistic expression included in the *PALINOIA* Work are copied in the *LEMONADE* Trailer, rending the works substantially similar in both their total concept and feel and in many particular elements.

20.     The works themselves are hereby incorporated by reference into this Complaint and will be made available to the Court upon request in such format as the Court may direct.

21.     The *LEMONADE* Trailer was aired extensively on national television and on Internet web sites.  Social media spread the *LEMONADE* Trailer across the Internet.  Media outlets aired and reported on the *LEMONADE* Trailer extensively, including reporting by *The Houston Press, Inquisitr, The Guardian, US Magazine, ABC News,* and *The Washington Post*. Exhibit 9.  Widespread dissemination through social media insured that millions saw the *LEMONADE* Trailer.

22.     The      YouTube      posting      of      the      *LEMONADE*      Trailer [https://www.youtube.com/watch?v=BB5zLq1zcdo] has received 10.5 million views with a ninety-five percent approval rate.  Exhibit 10.  On Twitter, the "Tweet" sent by Beyonce herself containing a link to the *LEMONADE* Trailer was "liked" by 120,000 and retweeted by 94,000 accounts.  Exhibit 11.  On Facebook, the *LEMONADE* Trailer received over two million views and over seventy thousand "likes."  Exhibit 12.

23.     The *LEMONADE* Trailer closes with a screen shot promoting an HBO film, also called *LEMONADE* ("LEMONADE Film"), by prominently displaying the date and time that the *LEMONADE* Film would be shown.  The *LEMONADE* Film was a one-time special that aired on HBO on April 23, 2016.  The *LEMONADE* Film was watched by 787,000 viewers, despite NBA Playoffs and a special tribute to the late recording artist Prince that aired during the same broadcast time slot. Exhibit 13.

24.     Upon information and belief, Defendants had access to Plaintiff's *PALINOIA* Work prior to the creation of the *LEMONADE* Trailer and the *LEMONADE* Film. Defendants copied substantial parts of The *PALINOIA* Work and used them to create the *LEMONADE*

Trailer and the *LEMONADE* Film. Therefore, Defendants infringed Plaintiff's copyright in the *PALINOIA* Work.

25.     Defendants' conduct is unlawful. It is proscribed by the United States Copyright Act.  In this action, Plaintiff seeks damages attributable to the infringement.

## JURISDICTION AND VENUE

26.     This Court has original subject matter jurisdiction over this action and the claims asserted herein, pursuant to 28 U.S.C. § 1331 and § 1338(a), in that this action arises under the laws of the United States and, more specifically, Acts of Congress relating to copyrights.

27.     Upon information and belief, each Defendant is subject to personal jurisdiction of the Court because it resides, has agents, does or transacts business, or is otherwise found, and has purposefully availed itself of the privilege of doing business in the State of New York and this District.

28.     Because, upon information and belief, each Defendant resides, has a regular and established place of business in this District, or may be found in this District, venue is proper in this District pursuant to 28 U.S.C. § 1400(a). Venue is also proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this District and a substantial part of the property that is the subject of this action is situated in this District. Alternatively, venue is also proper in this District pursuant to 28 U.S.C. § 1391(b)(3) because each Defendant has a regular and established place of business in this District or may be found in this District.

## THE PARTIES

29.     At all times material hereto, Plaintiff was an individual residing in Louisville, Kentucky.  Plaintiff is the creator, writer, director, and producer of the *PALINOIA* Work. Plaintiff owns all exclusive rights in and to the *PALINOIA* Work.

30.     Upon information and belief, Defendant Beyoncé Giselle Knowles-Carter conducts systematic and continuous business in New York and is a resident of Los Angeles, California.

31.     Upon information and belief, Defendant Beyoncé Giselle Knowles-Carter was a producer of the infringing *LEMONADE* Trailer and *LEMONADE* Film.

32.     Alternatively, Beyoncé Giselle Knowles-Carter had the power and ability to supervise or control the activities of one or more other Defendants and had a financial interest in the conduct of such parties as alleged herein.

33.     Defendant Sony Music Entertainment Inc. is a Delaware general partnership with headquarters at 25 Madison Avenue, New York, New York 10022, duly authorized to do and presently doing business in this District.

34.     At all times material hereto, Sony Music Entertainment Inc. has been engaged in the business of, among other things, developing, producing, and distributing music videos.

35.     Upon information and belief, Defendant Sony Music Entertainment Inc., including through its subsidiaries and related companies, produced and released the HBO *LEMONADE* Trailer and produced and released the *LEMONADE* Film.

36.     Alternatively, Defendant Sony Music Entertainment Inc. had the power and ability to supervise or control the activities of one or more other Defendants and had a financial interest in the conduct of such parties as alleged herein.

37.    Defendant Columbia Recording Corporation is a New York corporation with its headquarters at 25 Madison Avenue, New York, New York 10022, duly authorized to do and presently doing business in this District.

38.    At all times material hereto, Columbia Recording Corporation has been engaged in the business of, among other things, developing, producing, and distributing music and content promoting music including music videos.

39.    Upon information and belief, Defendant Columbia Recording Corporation produced and released the *LEMONADE* Trailer and produced and released the *LEMONADE* Film.

40.    Alternatively, Defendant Columbia Recording Corporation had the power and ability to supervise or control the activities of one or more other Defendants and had a financial interest in the conduct of such parties as alleged herein.

41.    Defendant Parkwood Entertainment LLC is a Nevada corporation with its headquarters at 80 State Street, Albany, New York, 12207, duly authorized to do and presently doing business in this District.

42.    At all times material hereto, Parkwood Entertainment LLC has been engaged in the business of, among other things, developing, producing, and distributing music and content that promotes music including music videos.

43.    Upon information and belief, Defendant Parkwood Entertainment LLC produced and released the *LEMONADE* Trailer and produced and released the *LEMONADE* Film.

44.    Alternatively, Defendant Parkwood Entertainment had the power and ability to supervise or control the activities of one or more other Defendants and had a financial interest in the conduct of such parties as alleged herein.

7

## FACTUAL BACKGROUND

**I.      The *PALINOIA* Work**

45.     Plaintiff Matthew Fulks is the author and owner of all exclusive rights in and to the *PALINOIA* Work and Plaintiff duly registered his copyright in the *PALINOIA* Work with the U.S. Copyright Office.  A true and correct copy of the Certificate of Registration for the *PALINOIA*  Work, Registration No. PA 1-985-860, is attached hereto as Exhibit 14.

46.     Plaintiff has never licensed or otherwise authorized Defendants to copy, distribute, or publicly disseminate the *PALINOIA* Work, or make derivative works based upon it.

47.      The *PALINOIA* Work was published in 2014 and has been available for viewing since 2014 by way of postings to the Internet.

48.     The *PALINOIA* Work is currently known to be available for viewing on the Internet at the following URLs:

        a.        https://www.youtube.com/watch?v=6IDzk0QY_64

        b.        http://short-filmz.com/palinoia-french-short-film/

        c.        http://www.filmlet.net/Mad_Fox_Pictures-PALINOIA?cat=3.1.4.10

49.     Further, as alleged above, Plaintiff submitted *PALINOIA* to Defendants, through an intermediary, in connection with a potential directing job in July 2015.

50.     Defendant Younce, in his capacity as an employee of Defendant Columbia, acknowledged receipt of Plaintiff's "info" by direct email to Plaintiff dated July 29, 2015.

51.     Defendants have appropriated protectable authorship from Plaintiff's valuable work *PALINOIA* to create the *LEMONADE* Trailer and the *LEMONADE* Film for the purpose of promoting the sale of the *LEMONADE* Album, all without any attempt to obtain authorization from Plaintiff.

52.     Upon information and belief, Defendants began production of the *LEMONADE* Trailer and *LEMONADE* Film in or around December 2015. The *LEMONADE* Trailer was published on the Internet on or around April 17, 2016, at https://www.youtube.com/watch?v=BB5zLq1zcdo and other locations around the Internet including Defendant Columbia's home page, http://www.columbiarecords.com, on which it remains today.

53.     The *LEMONADE* Trailer was created and used to promote the HBO *LEMONADE* Film, which in turn to promoted the *LEMONADE* Album worldwide.  The unconventional total concept and feel of the *LEMONADE* Trailer and the *LEMONADE* Film captivated audiences and enticed viewers to look for the *LEMONADE* Album.

54.     Trailers are created for the direct purpose of increasing the number of consumers within an audience for the anticipated release of a new work.  Defendants relied entirely upon the *LEMONADE* Trailer to generate viewership of and interest in the *LEMONADE* Film and, in turn, the *LEMONADE* Album, in order to increase album sales.

55.     An auxiliary function of trailers is to generate discussion amongst an audience about an anticipated release. The *LEMONADE* Trailer did exactly that.  The wide dispersion of the *LEMONADE* Trailer exposed people who would not have known about the *LEMONADE* Film and/or the *LEMONADE* Album to the imminent release of the two. By generating "buzz" among consumers, the *LEMONADE* Trailer had a direct influence on the audience of the *LEMONADE* Film and sales of the *LEMONADE* Album.

56.     In a 2016 CBS consumer survey, 44% of respondents reported choosing to see a movie because of what they saw in the movie trailer.  Exhibit 15.  Comments posted to web sites

9

that aired the *LEMONADE* Trailer are consistent with this conclusion, stating for example that one poster's "TV will definitely be on HBO Saturday night." Exhibit 16.

57.     Defendants' *LEMONADE* Trailer and *LEMONADE* Film were highly successful in developing interest in Beyonce's *LEMONADE* Album.  Defendant Columbia and Beyonce sold over one million records globally within the first month of the release of the *LEMONADE* Album.  Exhibit 17.  The *LEMONADE* Album was offered at a "premium" price point of $17.99, bolstering profits. The certified revenues generated by the *LEMONADE* Album within the first month exceeded $19 million, and album sales continue.  Exhibit 18.  The *LEMONADE* Album was ranked "No. 1" on sixteen different sales charts, and has attained "Gold" record status in both Australia and the United Kingdom.  Exhibit 19.

## III.    Similarities Between the *PALINOIA Work* and the *LEMONADE*

58.     As is evident from a comparison of the works themselves, *LEMONADE* Trailer is a derivative work of the *PALINOIA* Work that misappropriates the visual content, audio content (sound effects, dialogue, audio timing), mood, setting, theme, pace, and total content and feel of the *PALINOIA* Work.

59.     Among the many similarities between the *LEMONADE* Trailer and the *PALINOIA* Work, for which the Court is further directed to the works themselves, are a number of visual similarities, audio similarities, and similarities as to mood, pace, theme, setting, and total concept and feel.

60.     The total concept and feel of the works as a whole is substantially similar, as are, without limitation, the following representative elements of protectable expression, provided here solely for ease of reference.

10

61.   **VISUAL SIMILARITIES:** The *LEMONADE* Trailer is approximately sixty seconds long.  It contains nine visual elements that are substantially similar to visual elements found in the *PALINOIA* Work.  The screen time for these nine elements is thirty-nine seconds.  Thus, the majority of the *LEMONADE* Trailer is comprised of visual elements that are substantially similar to visual elements in the *PALINOIA* Work, creating a total concept and feel substantially similar to the *PALINOIA* Work, purely as to the visual aspects of the work.

62.   None of the images below taken from the *PALINOIA* work is  dictated or suggested by the non-linear narrative of the *PALINOIA* Work or the *LEMONADE* Trailer. The selection of so many similar images, employed in such a short film as the *LEMONADE* Trailer, is evidence of misappropriation of Plaintiff's authorship and contributes to the overwhelming similarity of total concept and feel of the respective works.

**VISUAL SIMILARITY ONE - GRAFFITI AND PERSONS WITH HEAD DOWN**

(1) Visual similarity one shows screenshots from the *PALINOIA* Work and the *LEMONADE* Trailer featuring images of the central character in a state of distress.  The images are strikingly similar, in that the character in each is leaning against a stable structure, with head down, face hidden from the viewer.

The characters in both images are also facing left, and are shot from the subject's left.  Both structures display hand-painted graffiti words in similar styles.

11



AT: 03:54                                    AT: 00:00

**VISUAL SIMILARITY TWO - RED PERSONS WITH EYES OBSCURED**

(2) Visual similarity two below shows images from the *PALINOIA* Work and the

*LEMONADE* Trailer comprised of shots of individuals who are lit using a single light with a red

gel, creating a heavy contrast between red and black. The shots are both medium distance shots

with the subjects' eyes intentionally obscured.



AT: 00:12                                    AT: 00:30

**VISUAL SIMILARITY THREE - PARKING GARAGE**

(3) Visual similarity three below shows images from the *PALINOIA* Work and the

*LEMONADE* Trailer comprised of visually similar images of parking garages, filmed with wide

shots, looking from one end of the garage to another. Both shots feature garages with repeating

ceiling light fixtures and columns with the lower halves of the columns painted yellow.  Both

images are framed to feature the garages' sectioned ceilings and concrete floors.

The filmmakers chose not to use fill lights for darkened areas in the shots, leaving the

only areas lit as those directly beneath the garage's own lights.  Additionally, the two images

share similar color contrast between yellow and blue hues.



AT: 03:34                            AT: 00:07

**VISUAL SIMILARITY FOUR - STAIRWELL**

(4) Visual similarity four below shows images from the *PALINOIA* Work and the *LEMONADE* Trailer comprised of shots of dimly lit stairwells featuring worn, gritty, concrete stairs with handrails.

Both images are filmed using angular, close-up shots and are filmed in a fast sweeping motion, as compared to the stationary shots that comprise the majority of the works.



AT: 04:43                    AT: 00:24

**VISUAL SIMILARITY FIVE - BLACK AND WHITE EYES**

(5) Visual similarity five shows screenshots from the *PALINOIA* Work and the *LEMONADE* Trailer that feature black and white photography, the only black and white scene in the *PALINOIA* Work, and one of only three black and white shots in the *LEMONADE* Trailer.

The filmmakers include only the main character's face, with a blank expression, staring directly into the camera.  In both screenshots, the tops and bottoms of the subjects' heads are "cut-off" in the frames, an unusual framing choice in a professionally produced film.



AT: 02:03                    AT: 00:39

**VISUAL SIMILARITY SIX – TITLE CARD SCREENS**

(6) Visual similarity six shows screenshots from the *PALINOIA* Work and the

*LEMONADE* Trailer that feature title card screens using only white text on a solid dark color

background, with the titles of the works centered in the middle of the frame, printed in all capital

letters and in strikingly similar fonts.



AT: 00:09                          AT: 00:57

**VISUAL SIMILARITY SEVEN - THE GRASS SCENE**

(7) Visual similarity seven shows screenshots from the *PALINOIA* Work and the *LEMONADE* Trailer featuring a center subject (in the PALINOIA Work a mound of earth and in the LEMONADE Trailer a human subject) surrounded by overgrown grass.  In both shots of the grasses incorporate dead and living grasses mixed together, creating green and tan colors in the shots.  Both images have similar overall hues and color contrast against the focus subject.



AT: 02:00                              AT:    00:51

**VISUAL SIMILARITY EIGHT - FEET ON THE STREET**

(8)    Visual similarity eight shows images from the *PALINOIA* Work and the *LEMONADE* Trailer comprised of close-up shots of human feet shot from the middle of the leg down, with identical framing where the feet are framed in the center both horizontally and vertically.  Both images include strong contrast between light and dark, with shadows cast on the feet.



AT: 00:18                          AT: 00:29

19

**VISUAL SIMILARITY NINE - SIDE-LIT OMINOUS FIGURES**

(9) Visual similarity nine shows screenshots from the *PALINOIA* Work and the

*LEMONADE* Trailer filmed in wide shots where the central subject is in the center of the frame,

with their feet cut-off in both shots, and lit from the right in a manner that obscures the faces for

an ominous effect.



AT: 00:25                                         AT: 00:06

63.     Plaintiff's selection of seemingly disparate images for his film was not dictated by

the narrative or genre of the film.  The selection, arrangement, and visual content of the

particular elements set forth above were intentional aesthetic decisions.  The lack of any

narrative necessity for combining these images, e.g. grasses, the feet, parking garage, stairs, etc.

emphasizes the similarities between the two works.

64.     **SIMILARITIES IN AUDIO VOICE OVER**: Both videos include the voiceover of a narrator reciting poetry over the sounds in the background.  One line of a poem closes each work. While the background sounds themselves are harsh and chaotic in both works, the poetry element remains a constant contrasting audio element throughout the two works.  The poems involve similar themes of alienation arising from the inability to be "seen" by a partner in a relationship.

65.     **SIMILARITIES IN AUDITORY TIMING:** The audio sequences in the *LEMONADE* Trailer and in the *PALINOIA* Work are also substantially similar.  Both works follow a similar pattern in which harsh noises are separated by calmer sounds in a substantially similar time table. Both works also include crescendos and decrescendos, where the audio is greatly increased or decreased in volume, at similar times.

66.     To cite just one example, the images below visually display the similarities in timing of the opening auditory sequence of the two works. The comparison shows that the initial dramatic increases in volume in both works occur at the same millisecond in the films' scores, 2.148 seconds.  Both sequences then taper-off from the loudest point, in parallel.



*PALINOIA* Audio

*LEMONADE* Audio

67.   **SIMILARITIES IN MOOD, SETTING, AND PACE:** The mood, setting, pace, and themes are substantially similar in the *LEMONADE* Trailer and the *PALINOIA* Work, contributing to the overwhelming similarity of total concept and feel.

  i.   **Mood:** The mood of both the *PALINOIA* Work and the *LEMONADE* Trailer is heavy, dark, and angst-laden.

  ii.   **Setting:** Both the *LEMONADE* Trailer and the *PALINOIA* Work include similar environments, (e.g. empty dark parking garage, grass field, stairwell, etc.).

  iii.   **Pace**: Both the *PALINOIA* Work and the *LEMONADE* Trailer progress in a rapid procession of short scenes or montage, interspersed with notable intermittent pauses through exaggeratedly slow scenes.

68.   **SIMILAR THEMES:** The themes in the *LEMONADE* Trailer derive directly from the themes that are expressed through Plaintiff's aesthetic decisions in the *PALINOIA* Work, including, without limitation, the following themes: destruction, alienation, heartbreak, and chaos versus order.

69.   In addition to the specific elements of Plaintiff's expression that comprise Plaintiff's original *PALINOIA* Work, the original way in which the Plaintiff has selected, coordinated, and arranged the elements is protectable expression.  The Defendants' copying becomes apparent when the numerous aesthetic decisions embodied in Plaintiff's work are considered in relation to one another in comparison to Defendants' work.

**IV.    Access to the *PALINOIA* Work**

68.    One or more Defendant's had access to the *PALINOIA* Work prior to the creation of the *LEMONADE* Trailer and the *LEMONADE* Film.

69.    Columbia had direct access to the *PALINOIA* Work as Bryan Younce, the Senior Vice President of Video Production at Columbia, received the *PALINOIA* Work directly from Brain Beck, the manager of MS MR.

70.    Defendant Sony is the parent company of Columbia, and upon information and belief, Sony had an opportunity to view or copy the *PALINOIA* Work through Bryan Younce who worked as a senior vice president at its subsidiary Columbia and who was provided the *PALINOIA* Work.

71.    Upon information and belief, Defendant Parkwood had access to the *PALINOIA* Work through Columbia, because it worked in tandem with Columbia to create the *LEMONADE* Trailer and *LEMONADE* Film providing it with an opportunity to view or copy the *PALINOIA* Work. Publicly available information shows that editors who have recently been commissioned by Columbia for video production work also were commissioned by Parkwood for the *LEMONADE* project, strongly suggesting that Parkwood would also have had an opportunity to view or copy the *PALINOIA* Work through the editors who perform work for both companies. Exhibits 20 and 21.

72.    Upon information and belief, Defendant Beyonce had access to the *PALINOIA* Work through both Columbia and Parkwood. Beyonce created Parkwood in 2008, and would have had an opportunity to view or copy the *PALINOIA* Work through her close association with Parkwood and through the editors whom Parkwood commissioned.  She would also have had

access to the *PALINOIA* Work through her record label, Columbia, as the distributor of the *LEMONADE* materials.

## COUNT I COPYRIGHT INFRINGEMENT

### (Against All Defendants)

73.     Plaintiff incorporates by reference paragraphs 1 through 72, and re-alleges them here as though fully set forth herein.

74.     The *PALINOIA* Work is an original work of authorship fixed in a tangible medium of expression that constitutes a motion picture and/or audiovisual work pursuant to 17 U.S.C. § 102(a), subject to copyright protection under the Copyright Act, U.S.C. §§ 101 *et seq.*

75.     Plaintiff is the owner of all rights, including copyright, in the *PALINOIA* Work.

76.     Plaintiff's exclusive rights to the *PALINOIA* Work extend to each protectable component of the *PALINOIA* Work, and includes the exclusive right to create derivative works.

77.     Plaintiff has registered his *PALINOIA* Work with the U.S. Copyright Office and has received a Certificate of Registration dated May 4, 2016 bearing Registration No. PA 1-985-860.

78.     Plaintiff has the right and standing to enforce his exclusive rights to the *PALINOIA* Work and its copyrightable component parts.

79.     At all times material hereto, Plaintiff has duly complied with all of the provisions of the copyright laws of the United States applicable to the *PALINOIA* Work.

80.     Defendants had access to the *PALINOIA* Work.  The *PALINOIA* work was sent directly to a senior vice president who worked with Beyonce and produced music videos for her at Columbia. Sony has direct access to material sent to its subsidiary, Columbia. Parkwood and Beyonce worked with Columbia, and through extension its parent Sony, to create the

*LEMONADE* Trailer and LEMONADE Film and, upon information and belief, would have had access to editors commissioned by Columbia who would have had access to Plaintiff's original treatments and the *PALINOIA* Work.

81.    By producing, transmitting, and distributing the *LEMONADE* Trailer and the *LEMONADE* Film, Defendants have reproduced, prepared derivative works based upon, publicly performed, and distributed copies of substantial portions of the *PALINOIA* Work or derivative works thereof, without Plaintiff's permission or authorization. Defendants continue to do so.

82.    Defendants' conduct constituted, and continues to constitute, infringement upon Plaintiff's exclusive rights to reproduce, prepare derivative works based upon, publicly perform, and distribute *PALINOIA*, all in violation of 17 U.S.C. §§ 106 and 501.

83.    Defendants' infringement was, and continues to be, intentional, deliberate, willful, malicious, and in blatant disregard of Plaintiff's exclusive rights.

84.    Defendants' infringing conduct has caused Plaintiff to suffer damages and harm, including, but not limited to, lost derivative market exploitation opportunity, lost revenues and profits, loss of creative attribution, and other damages, the exact nature of which will be proven at trial.

85.    Plaintiff is entitled to an award against Defendants for the recovery of Defendants' profits attributable to the infringement and/or Plaintiff's actual damages, or other damages pursuant to 17 U.S.C. §§ 504 and 505.

86.    Plaintiff is entitled to the disgorgement of Defendants' profits attributable to distribution of the *LEMONADE* Trailer, the *LEMONADE* Film, and the *LEMONADE* Album sold worldwide.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

1.       That Defendants be adjudged to have infringed upon Plaintiff's copyrights in *PALINOIA*, in violation of 17 U.S.C. §§ 106 and 501;

2.       That Defendants be required to account to Plaintiff for any and all profits derived from and attributable to their exploitation of *PALINOIA* including profits from the sales of the *LEMONADE* Album in all media, from all sources, worldwide;

3.       That Defendants be ordered to pay over to Plaintiff all damages, including future damages, that Plaintiff has sustained, or will sustain, as a consequence of the acts complained of herein and that Plaintiff be awarded any profits derived by Defendants as a result of and attributable to said acts;

6.       For leave to amend this Complaint, including by adding parties and claims and by amending this prayer for damages, and otherwise, as the facts and circumstances may warrant from time to time;

6.       That Plaintiff be awarded pre-judgment interest on any damages awarded in this action;

7.       For trial by jury of all issues so triable; and

8.       That Plaintiff have such other and further relief as the Court may deem appropriate.

## <u>DEMAND FOR JURY TRIAL</u>

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff Matthew Fulks respectfully demands trial by jury of all issues so triable.

This 8th day of June, 2016.

<u>s/ Robert W. Clarida/</u>
Robert W. Clarida
REITLER KAILAS & ROSENBLATT LLC
885 Third Ave, 20th Floor
New York, New York 10022
Tel. 212-209-3044
Email: rclarida@reitlerlaw.com

<u>s/Amy Sullivan Cahill/</u>
Amy Sullivan Cahill
CAHILL IP, PLLC
333 East Main Street
Suite 403
Louisville, Kentucky 40202
Tel. 502-657-7830
Email: acahill@cahill-ip.com
(SDNY admission pending)

***Counsel for Plaintiff***
